IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHARLES L. TIMMONS, | : | CIVIL ACTION |
|     Petitioner | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAVID DIGUGLIELMO, et al. | : | NO. 05-CV-3801 |
|     Respondents | : | |

<u>REPORT AND RECOMMENDATION</u>

TIMOTHY R. RICE
U.S. MAGISTRATE JUDGE

    Petitioner Charles L. Timmons, a prisoner at the State Correctional Institution at Graterford, has filed this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Timmons claims his imprisonment violates the Constitution because his sentence expired in April, 1998 and the Pennsylvania Board of Probation and Parole ("the Board") nevertheless has continued his imprisonment. For the following reasons, I respectfully recommend his petition be DENIED with prejudice as untimely under § 2244(d)(1). In the alternative, his claim that the Board erred in computing his sentence is meritless because Timmons' challenge does not raise a federal constitutional question, and under Pennsylvania law the commission of a new crime by a parolee forfeits all time spent on parole even if such time previously had not been forfeited after earlier technical violations, <u>Dorsey v. Pennsylvania Bd. of Prob. & Parole</u>, 854 A.2d 994, 997 (Pa. Commw. 2004).

<u>FACTUAL AND PROCEDURAL HISTORY</u>

    Timmons was convicted of burglary in 1976. He filed his federal habeas petition on July

15, 2005.  During those 20 years, Timmons experienced a roller coaster ride resulting in his freedom eight separate times, only to be followed by new crimes or parole violations, loss of parole credits, and new prison terms.  Timmons is currently in custody serving a 2001 sentence for drug trafficking of two-to-four years imprisonment effective May 5, 2005.  He is also in custody of the Board on parole from his 1976 sentence of one-to-fifteen years imprisonment, which expires September 6, 2007.

     Timmons' odyssey through the criminal justice system began May 5, 1978 when he was paroled after serving the minimum one-year term on his 1976 burglary conviction.  After failing to report to his parole officer, which resulted in his being declared "delinquent," he was recommitted effective October 5, 1984 and received no credit for the time he was in violation.  His maximum expiration date was recalculated as July 11, 1996.

     Timmons was paroled a second time on April 5, 1986, but was recommitted for drug use on October 14, 1987.  He was released a third time on February 16, 1988, but recommitted for technical parole violations on January 23, 1989.  His fourth release was approved on June 27, 1989, followed by another violation on May 23, 1990 for failing to report his arrest, changing his residence without permission, and failing to report.  His fifth release was approved February 14, 1992, followed by another violation on October 8, 1993 for technical violations and drug use.

     While on parole, Timmons was charged with drug trafficking in 1993 and 1994, resulting in his imprisonment as a parole violator effective September 19, 1994.  His conviction on the new drug trafficking charges resulted in Timmons losing credit for all time previously spent on parole under Pennsylvania's Parole Act, 61 Pa.Cons.Stat.Ann. § 331.21a(a).  Under § 331a(a), a parolee convicted of a new crime while on parole forfeits his "street time," or time spent at

liberty on parole, but under § 331a(b), a parolee who commits only a technical violation is permitted to retain his credit for time served on parole in good standing.  A parolee, however, loses the benefit of credits that had been preserved despite technical violations if he subsequently commits a new crime.  At that point, the credits are no longer insulated from forfeiture and all time served on parole in good standing is lost.  See Dorsey, 854 A.2d at 997-98.

      Based on these lost credits, the expiration date of Timmons' 1976 sentence was recomputed to May 30, 2004 – well beyond the April 8, 1998 date on which Timmons claims he should have been released if he had retained his credit for time served on parole in good standing.  The Board mailed Timmons notice of the recalculated dates on October 30, 1995.  Thus, as of September 19, 1994, Timmons had served only five years, three months, and 19 days on his original 1976 sentence, leaving a balance of more than nine years remaining.

      Timmons filed no legal challenge to the Board's 1995 action or its computation.

      Timmons was paroled a sixth time on November 8, 1996 on his 1976 sentence and again on September 1, 1998 on his 1994 drug trafficking sentences.  Timmons violated his parole based on technical violations and was recommitted effective March 18, 1999.  The Board released him for a seventh time on August 23, 2000 on his 1976 sentence and after his 1994 sentences had expired.

      In 2001, Timmons committed yet another new drug trafficking offense and was recommitted effective July 19, 2001.  Under § 331.21a(a), this resulted in his loss of credit for all time he had been on parole since the 1993 and 1994 convictions, and his expiration date was recalculated on January 31, 2003 to September 6, 2007.  He was paroled an eighth time on his 1976 sentence to serve two-to-four years imprisonment for his 2001 drug conviction.

Meanwhile, Timmons filed only two challenges to the Board's actions. He contested the Board's 1999 recommitment decision on November 8, 1999, resulting in the Commonwealth Court's July 11, 2000 affirmance of the Board's denial. On April 24, 2003, he sought Commonwealth Court review of the Board's July 31, 2003 re-computation of his release date to September 6, 2007 based on his second new drug offense. The Commonwealth Court affirmed the Board on March 4, 2004 and the Pennsylvania Supreme Court denied review on May 24, 2005.

## DISCUSSION

I. Timeliness

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a one-year limitation period for filing applications for writs of habeas corpus. 28 U.S.C.A. § 2244(d)(1). It provides that:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of -
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral appeal; or

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Section 2244 further provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).

Following the enactment of this one-year period of limitations, the United States Court of Appeals for the Third Circuit interpreted § 2244 to provide for a "one year grace period" following its effective date of April 24, 1996. See Burns v. Morton, 134 F.3d 109, 111 (3d Cir. 1998) ("applying § 2244(d)(1) to bar the filing of a habeas petition before April 24, 1997, where the prisoner's conviction became final before April 24, 1996, would be impermissibly retroactive"). As a result, a petitioner whose conviction was final prior to the 1996 enactment of the limitations period in § 2244 was permitted to seek federal habeas corpus relief until April 23, 1997. Moreover, a petition with claims that trigger one of § 2244(d)(1)(B)-(D)'s alternative starting dates, but predate the AEDPA's enactment, qualifies for the grace period ending April 23, 1997.

Timmons alleges he has been improperly imprisoned since April 8, 1998, which he maintains is his maximum sentence date, in violation of due process, equal protection, and his right to be free from cruel and unusual punishment. Because Timmons is a state prisoner and is in custody pursuant to a state judgment, his only recourse for federal habeas relief challenging his sentence or its execution is 28 U.S.C. § 2254. See Coady v. Vaughn, 251 F.3d 480, 486 (3d Cir. 2001); Cook v. New York State Div. of Parole, 321 F.3d 274, 278-79 (2d Cir. 2003) (state

prisoner challenge to revocation of parole under § 2254). The Second, Fourth, Fifth, and Ninth Circuits have each held the limitations period applies to § 2254 petitions challenging administrative decisions affecting the execution of the state sentence. See Cook, 321 F.3d at 280 (limitations period applies to challenge to revocation of parole); Wade v. Robinson, 327 F.3d 328, 331-32 (4th Cir. 2003)(every habeas petition filed by persons in custody pursuant to a state court judgment is subject to the limitations period); Kimbrell v. Cockrell, 311 F.3d 361, 363 (5th Cir. 2002) (contesting the outcome of prison disciplinary proceedings); Shelby v. Bartlett, 391 F.3d 1061, 1063 (9th Cir. 2004) (challenges to prison administrative disciplinary decisions). Only the Seventh Circuit has held to the contrary. See Cox v. McBride, 279 F.3d 492, 493-94 (7th Cir. 2002) (limitation period applies to petitions contesting the judgment of a state court, but not to petitions contesting administrative decisions).

     Although this is an issue of first impression in this circuit, I am persuaded by the well-reasoned opinion of Judge Trott in Shelby, which examined the rationale of all cases addressing this issue. The limitations period applies to all petitions filed by a person in custody pursuant to a state court judgment. Shelby, 391 F.3d at 1065. It is not limited to petitions challenging only the underlying state court judgment. Id. Thus, Timmons was in custody pursuant to a state court judgment within the meaning of § 2241(d)(1) even if he was serving a term for parole violations. This application of the limitations period controls for several reasons. First, as explained in Shelby, it is based on rules of statutory construction and the goals of the AEDPA. Id. Second, it is consistent with the Third Circuit's determination that a challenge to a parole revocation must proceed under § 2254, rather than the more general provisions of § 2241, because a prisoner may challenge either the imposition or the execution of a sentence under § 2254. Coady, 251 F.3d at

6

486. Third, it is supported by the Third Circuit's determination that a petition challenging the denial of parole was a "second and successive" petition where the claim was ripe and could have been raised in an earlier habeas petition challenging the underlying conviction. See Benchoff v. Colleran, 404 F.3d 812, 817-18 (3d Cir. 2005) (applying a gatekeeping provision of AEDPA to petition challenging the execution, rather than the imposition, of a sentence). All of these reasons are consistent with the AEDPA's purpose of promoting the finality of state court judgments. See Duncan v. Walker, 533 U.S. 167, 179 (2001).

Here, Timmons' limitation period began to run on the effective date of the AEDPA, because he learned of the Board's revocation of his credit for time served on parole in good standing on October 30, 1995, prior to the enactment of the AEDPA.[1] The triggering date for his claim was "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D); see Redd v. McGrath, 343 F.3d 1077 (9th Cir. 2003) (factual predicate of petitioner's claims was the Board of Prisons' denial of his administrative appeal).

Timmons never challenged in state court the Board's October 30, 1995 decision to recompute his sentence expiration date to May 30, 2004. This is the date when Timmons first learned the factual predicate for his claim that he would be held in custody beyond his alleged April, 1998 release. His federal petition was not filed until July 15, 2005 – more than nine years after the Board recalculated his maximum date to May 30, 2004. Accordingly, his federal petition falls outside the limitations period in § 2244.

---

[1] Attached as the last page of Timmons' memorandum in support of his petition is a copy of the Board's notice mailed on October 30, 1995. See Pet'r's Mem.

Absent statutory or equitable tolling, Timmons was required to file his federal habeas claim on or before April 23, 1997, when the grace period ended. The earliest date Timmons' federal petition can be deemed filed is July 15, 2005, the date on which it was signed. Burns v. Morton, 134 F.3d at 113 ("a pro se prisoner's petition is deemed filed at the moment he delivers it to prison officials for mailing to the district court"). Thus, his federal petition is untimely unless Timmons can establish the limitations period was tolled through July 15, 2005.

The limitations period may be tolled during the time a state collateral proceeding is pending if the collateral petition was properly filed under state law. 28 U.S.C. § 2244(d)(2). A properly filed state petition is one "submitted according to the state's procedural requirements, such as the rule governing the time and place for filing." Lovasz v. Vaughn, 134 F.3d 146, 148 (3d Cir. 1998). Timmons' only challenges to the Board's multiple parole revocations were filed in 1999 and 2003 – well after the Board's 1995 decision resulting in the loss of parole credits he alleges would have led to his release in 1998. Even if the time during which these state court challenges were excluded from the limitations period, Timmons 2005 federal petition was filed well beyond expiration of the limitations period on April 23, 1997.

Timmons cannot satisfy any of the exceptions to the period of limitations set forth in § 2244(d)(1)(B)-(C). He does not allege any state action that prevented him from filing his petition, and he does not assert any claim that relies on a new rule of retroactively applicable constitutional law.[2]

---

[2] Even assuming Timmons' federal petition is viewed as a § 2241 filing and not subject to the one-year limitations period, see Faulkner v. Dep't. of Corrections, 221 F. Supp.2d 560, 564 (E.D. Pa. 2002) (Brody, J.) (parole board's sentence recomputation is a facet of execution of sentence, not imposition of sentence, and challenges fall under § 2241), Timmons failed to properly exhaust his state remedies and the claims are now procedurally defaulted. Timmons'

Nevertheless, Timmons claims his 2003 Board challenge, which ended with the Pennsylvania Supreme Court's denial of review on May 24, 2005, renders his July, 2005 federal habeas challenge timely. He alleges the factual predicate for his federal claim did not arise until 2003. In reviewing Timmons' claim, however, the Commonwealth Court noted Timmons did not raise the claim he now asserts in his federal petition. The Court noted Timmons had alleged before the Board in 2003 only that "he had not been paroled under the correct sentence number, and, therefore, could not have been validly recommitted." Timmons v. Pennsylvania Bd. of Prob. & Parole, No. 898 C.D. 2003 at 2-3 (Pa. Commw. Dec. 19, 2003). Timmons' pro se Commonwealth Court challenge, however, argued that once the Board recommitted him for a technical parole violation in 2001, which cannot result in the loss of "street time," or time spent while he was free on parole, the Board was prohibited from recommitting him later in 2001 based on his new criminal conviction. Id. at 3.

First, Timmons' challenge to the Board's action in 2001 is identical to the Board's action in 1995, which resulted in the initial forfeiture of Timmons' parole credits beyond Timmons' alleged 1998 release date. Thus, Timmons cannot allege that he first learned the factual predicate

---

failure to challenge the Board's 1995 decision extending his sentence beyond April, 1998 resulted in his failure to properly exhaust his state remedies, thereby procedurally defaulting his claims. Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his available remedies in state court. O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999). However, "if [a] petitioner failed to exhaust state remedies and the court to which petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred . . . there is procedural default for the purpose of federal habeas . . . ." Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991); McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999). The purpose of the procedural default doctrine is to prevent habeas petitioners from avoiding the exhaustion doctrine by defaulting their federal claims in state court. Coleman, 501 U.S. at 732. Although the issue of procedural default is best addressed by the state courts, a federal court may dismiss a petition as procedurally barred if state law would unambiguously deem it defaulted. Carter v. Vaughn, 62 F.3d 591, 595 (3d Cir. 1995).

for his claim in 2001, when the Board had undertaken the identical action six years earlier.

Second, although the Commonwealth Court deemed Timmons's belated pro se challenge waived, id. at 4, it also characterized his claim as frivolous. The court recognized that since 1983 state law has precluded a parolee from retaining credit for time served on liberty despite a technical violation if the parolee is later recommitted as a convicted parole violator. Id. at 5. Timmons' claim, the Court concluded, "would benefit a parolee who committed a technical parole violation and then received a reparole . . . by shielding him from forfeiture of the street time which preceded the technical violation, while affording no such benefit to a parolee who is free on parole for a like total period but who commits no technical violation." Id. (citing Houser v. Pennsylvania Bd. of Prob. & Parole, 682 A.2d 1365, 1368 (Pa. Commw. 1996) (quoting Morris v. Pennsylvania Bd. of Prob. & Parole, 465 A.2d 97, 98 (Pa. Commw. 1983)).

Moreover, the Court expressly rejected Gregory v. Pennsylvania Bd. of Prob. & Parole, 533 A.2d. 509 (Pa. Commw. 1987), on which Timmons also relies in his federal petition. See Timmons, No. 898 C.D. 2003 at 5 n.5 (Houser rejected language in Gregory). The Commonwealth Court's decision in Houser was recently reaffirmed in Dorsey, where the court rejected a parolee's claim that Gregory precluded the Board from forfeiting parole credits earned despite a technical violation as a sanction for a parolee who commits a subsequent new crime. Dorsey, 854 A.2d at 897-98. The legislature's clear intent, the court noted in upholding § 331.21a(a)'s constitutionality, "is to discourage the commission of new crimes while on either parole or re-parole by imposing a costly sanction upon offenders." Id. at 998.

Thus, if Timmons' petition were somehow timely, his constitutional claims are meritless because the loss of parole credits under Pennsylvania law does not implicate a federal

10

constitutional question.  See Zerbst v. Kidwell, 304 U.S. 359, 363 (1938); U.S. ex rel. Lawson v. Cavell, 425 F.2d 1350, 1352 (3d Cir. 1970); U.S. ex rel. Heacock v. Myers, 251 F.Supp. 773, 774 (E.D. Pa. 1966), aff'd, 367 F.2d 583 (3d Cir. 1966); cf. Hayes v. Muller, 1996 WL 583180 (E.D. Pa. 1996) (Padova, J.) (rejecting constitutional challenges to Pennsylvania's Parole Act in the context of prisoner's § 1983 action).

Having determined that this petition is untimely and fails to meet any exception to the limitations period of §2244(d)(1), and in the alternative, has no merit, I make the following:

## R E C O M M E N D A T I O N

AND NOW, this       day of September 2006, it is respectfully recommended that the petition for a writ of habeas corpus be DENIED with prejudice.  It is also RECOMMENDED that a certificate of appealability not be granted.

BY THE COURT:

\s\ TIMOTHY R. RICE
TIMOTHY R. RICE
U.S. MAGISTRATE JUDGE